IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 4:23-CR-43-ALM-KPJ-1 |
| | § | |
| NICHOLAS DINSMORE | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Now before the court is the request for revocation of Defendant Nicholas Dinsmore's ("Defendant") supervised release. After the District Judge referred the matter to this court for a report and recommendation, the court conducted a hearing on June 26, 2024, to determine whether Defendant violated his supervised release. Defendant was represented by Michael Pannitto of the Federal Public Defender's Office. The Government was represented by Lesley Brooks.

Defendant was sentenced on December 15, 2021, before The Honorable Ed Kinkeade of the Northern District of Texas after pleading guilty to the offense of Access Device Fraud; Aiding and Abetting, a Class C felony. This offense carried a statutory maximum imprisonment term of ten years. The guideline imprisonment range, based on a total offense level of 15 and a criminal history category of IV, was 30 to 37 months. Based on a defense motion for a variance to which the Government did not object, Defendant was subsequently sentenced below the guideline range to 24 months imprisonment followed by a two year term of supervised release subject to the standard conditions of release, plus special conditions to include computer and internet monitoring, not using a computer without authorization from the probation officer, notifying the probation officer of any changes to communication devices, not be employed in any fiduciary capacity, not possessing mail in any name other than his legal name, mental health treatment, substance abuse treatment and testing, and a $100 special assessment. On June 14, 2022, Defendant completed his

period of imprisonment and began service of the supervision term in the Northern District of Texas. On August 9, 2022, supervision of the case was transferred to the Eastern District of Texas. On September 9, 2022, the case was returned to the Northern District of Texas due to Defendant using his father's truck without permission and not residing at the approved residence. On November 29, 2022, supervision was returned to the Eastern District of Texas due to Defendant continuing to live in the Eastern District of Texas. Jurisdiction of this case was transferred on March 6, 2023, and the case was reassigned to The Honorable Amos L. Mazzant, III, U.S. District Judge for the Eastern District of Texas.

On September 5, 2023, the United States Probation Officer executed a First Amended Petition for Warrant or Summons for Offender Under Supervision. (Dkt. #7, Sealed). The First Amended Petition asserts that Defendant violated 15 conditions of supervision, as follows: (1) (mandatory) Defendant must not commit another federal, state, or local crime; (2) (mandatory) Defendant must refrain from any unlawful use of a controlled substance; (3) (special) Defendant shall participate in an outpatient program approved by the probation officer for treatment of narcotic, drug, or alcohol dependency that will include testing for the detection of substance use, abstaining from the use of alcohol and all other intoxicants during and after the completion of treatment, and contributing to the costs of services rendered (copayment) at a rate of at least $10 per month; (4) (standard) After initially reporting to the probation office, Defendant will receive instructions from the court or the probation officer about how and when Defendant must report to the probation officer, and Defendant must report to the probation officer as instructed; (5) (standard) Defendant must not knowingly leave the federal judicial district where Defendant is authorized to reside without first getting permission from the court or the probation officer; (6) (special) Defendant shall not use any computer other than the one Defendant is authorized to use

REPORT AND RECOMMENDATION – Page 2

without prior approval from the probation officer; (7) (standard) Defendant must truthfully answer the questions asked by Defendant's probation officer; (8) (special) Defendant shall notify the probation officer within 72 hours of acquiring or changing any type of communication device, including pagers, cellular telephone, personal telephones, business telephones, electronic mail addresses, or web addresses; (9) (standard) Defendant must live at a place approved by the probation officer. If Defendant plans to change where he lives or anything about his living arrangements (such as the people he lives with), Defendant must notify the probation officer at least ten days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, Defendant must notify the probation officer within 72 hours of becoming aware of a change or expected change; (10) (standard) Defendant must allow the probation officer to visit him at any time at his home or elsewhere, and Defendant must permit the probation officer to take any items prohibited by the conditions of Defendant's supervision that he or she observes in plain view; (11) (standard) Defendant must not communicate or interact with someone he knows is engaged in criminal activity. If Defendant knows someone has been convicted of a felony, he must not knowingly communicate or interact with that person without first getting the permission of the probation officer; (12) (standard) If Defendant is arrested or questioned by a law enforcement officer, Defendant must notify the probation officer within 72 hours; (13) (standard) Defendant must follow the instructions of the probation officer related to the conditions of supervision; (14) (special) Defendant shall participate in outpatient mental treatment services as directed by the probation officer until successfully discharged. These services may include medications prescribed by a licensed physician; and (15) (special) Defendant shall participate in an outpatient program approved by the probation officer for treatment of narcotic, drug, or alcohol dependency that will include testing for the detection of substance use, abstaining

from the use of alcohol and all other intoxicants during and after completion of treatment, and contributing to the costs of services rendered (copayment) at the rate of at least $10 per month. (Dkt. #7 at pp. 1–6, Sealed).

The First Amended Petition alleges that Defendant committed the following acts: (1) On April 14, 2023, in Henderson County, Texas, Defendant was arrested by the Athens, Texas Police Department for the offenses of Fraud Possess/Use Credit or Debit Card < 5-Credit Card/Automated Teller Machine Fraud; Fraud Use/Possess Identifying Info # Items <5; Theft Property>=$2,500<$30K-All Other Larceny; and Evading Arrest Detention. On June 15, 2023, an Indictment was filed in the 392nd District Court under Docket No. CR23-0584-173 for Forgery Financial Instrument>=$2500<$30K IAT with a bond amount of $20,000 and under Docket No. CR23-0585-0173 for Fraud/Use Posses Identifying Infor# Items <5 with a bond amount of $15,000. On July 12, 2023, a Complaint/Information was filed in the County Court at Law 2 under Docket No. 2023-0525CCL2 for Evading Arrest Detention, a class A misdemeanor, with a bond amount of $15,000. According to the offense report, on April 14, 2023, the Athens Police Department was dispatched to Verabank regarding someone trying to pass a fake check. Officers were able to identify Defendant. When the officer approached, Defendant began walking towards the back of the bank. The officer followed him, and Defendant began running. The officer pursued and finally apprehended Defendant at the back exit of an Office Depot. Upon speaking with the manager at Verabank, the officer was advised Defendant presented an Arkansas driver's license and a Verabank check. The check and driver's license were both registered to Joshua Largent. Upon being questioned, Defendant admitted they were fake. A credit card registered to Mr. Largent was also found, and Defendant claimed it was fake as well. Other credit cards were found in his possession belonging to Randy Dinsmore (Defendant's father) and Amanda J. Jimison. Defendant

was subsequently arrested and booked into the Henderson County Jail; (2) and (3) During an office visit conducted on August 29, 2022, Defendant submitted a urine specimen which produced positive results for Amphetamine and Methamphetamine. He admitted to using Methamphetamine through written and verbal admission, and the specimen was confirmed positive by the national lab. During an office visit conducted on September 9, 2022, Defendant submitted a urine specimen which produced positive results for Amphetamine and Methamphetamine. He admitted to using Methamphetamine through verbal admission, and the specimen was confirmed positive by the national lab. During an office visit conducted on September 12, 2022, in the Northern District of Texas, Defendant admitted to using Methamphetamine on September 10, 2022. During an office visit conducted on January 17, 2023, Defendant submitted a urine specimen that produced positive results for Methamphetamine. He denied using Methamphetamine through written admission. The specimen was confirmed positive by the national lab; (4) For the months of February and March 2023, Defendant failed to report to the United States Probation Office by the fifth day of the month, as previously instructed; (5) During a field visit conducted on February 15, 2023, Defendant's father advised the U.S. Probation Office that Defendant was not home and was working in Houston, Texas. Defendant did not receive permission to travel to Houston, Texas; (6) During an office visit conducted on January 17, 2023, Defendant was asked if he possessed any other devices that were not monitored. He denied having any other devices. However, the Eastern District of Texas cyber-crime specialist provided information showing Defendant had several devices that were not monitored. Defendant did not have prior approval for these devices; (7) Defendant was untruthful when asked about possessing any unmonitored devices during an office visit conducted on January 17, 2023; (8) On January 26, 2023, the U.S. Probation Office received notification from RemoteCom that Defendant was requesting to add a new Android Device to his account.

REPORT AND RECOMMENDATION – Page 5

However, Defendant failed to notify the U.S. Probation Office of his new device; (9) On August 30, 2022, Defendant's father advised the U.S. Probation office that Defendant stole his truck and had not been back in a few days. His father stated Defendant did not reside at the home at that moment. Defendant failed to advise probation of his living arrangements; (10) The U.S. Probation Office attempted home visits at the listed residence on several occasions, and each time Defendant was not present. Defendant stated that he resided with his father, and the U.S. Probation Office believes his father may have been covering for him; (11) A review of Defendant's RemoteCom Internet monitoring activity revealed that, on December 31, 2022, he was in communication, via email, with Brandon Michael Bay, a convicted felon, (Reg Number 23922-509) who is currently incarcerated at FCI Seagoville. Defendant did not have permission to interact with this individual; (12) On January 24, 2023, Defendant was involved in a vehicle accident in Paris, Texas. The Paris Police Department was dispatched to the scene and questioned him regarding the accident; however, he failed to notify the U.S. Probation Office within 72 hours; (13) Defendant was instructed on several occasions to contact Lifepath to add his probation officer on his release of information to verify that he was enrolled and receiving mental health services. However, he failed to contact Lifepath as directed; (14) Defendant was initially receiving services through Lifepath. However, when the probation officer contacted Lifepath to obtain verification, the probation officer was advised that Defendant did not add his probation officer to the release of information. As such, Defendant was instructed, on several occasions, to add his probation officer's name. Ultimately, Defendant's probation officer was able to confirm through Lifepath that Defendant attended his initial session but failed to attend any other sessions; and (15) Defendant was initially receiving services through Grace to Change. However, due to him failing to attend, he was unsuccessfully discharged. (Dkt. #7 at pp. 1–6, Sealed).

Prior to the Government putting on its case at the final revocation hearing, the Government moved to dismiss allegations (2)–(15). Defendant entered a plea of true to allegation (1) of the First Amended Petition.

Having considered the First Amended Petition and the plea of true to allegation (1), the court finds that Defendant did violate his conditions of supervised release. Defendant waived his right to allocute before the District Judge and his right to object to the report and recommendation of this court.

## RECOMMENDATION

Pursuant to the Sentencing Reform Act of 1984, the court recommends that Defendant's supervised release be revoked and that he be committed to the custody of the Bureau of Prisons to be imprisoned for an additional term of twelve (12) months to run consecutively to any state court sentence with no supervised release to follow.

The court further recommends that allegations (2)–(15) be dismissed.

The court finally recommends that Defendant be housed in the Bureau of Prisons facility in the El Reno, Oklahoma area, if appropriate.

**SIGNED this 8th day of July, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE